Submitted June 26, 2019, affirmed May 28, 2020

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

ROBERT SILVER,
*Defendant-Appellant.*

Polk County Circuit Court
14CR00565; A166768

467 P3d 67

Defendant was convicted of one count of felony first-degree animal neglect, one count of felony second-degree animal neglect, and 15 counts of misdemeanor first-degree animal neglect, after sheriff's deputies discovered a large herd of neglected alpacas on his property. As part of his sentence, pursuant to ORS 167.350(1) (2013), defendant was ordered to pay $15,622.09 to reimburse the sheriff's office for the costs it incurred to care for the herd until the 176 surviving alpacas were sufficiently stable to be removed. Relying on *State v. Marsh*, 187 Or App 47, 66 P3d 541 (2003), defendant argues that the trial court erred in ordering him to pay care costs for the entire herd, because the criminal convictions pertain only to 17 specific alpacas, and those 17 alpacas died before receiving any care. *Held*: The trial court did not err in ordering defendant to pay $15,622.09. Unlike in *Marsh*, the jury expressly found in this case that "the offense [was] part of a criminal episode involving 40 or more animals," as an enhancement factor for the two felony convictions, which was a finding regarding the entire herd. As such, defendant was convicted not only of neglecting the 17 alpacas, but of neglecting the 17 alpacas as part of a criminal episode involving the entire herd, which permitted the trial court's order under ORS 167.350(1) (2013).

Affirmed.

Norman R. Hill, Judge.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Erica Herb, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Greg Rios, Assistant Attorney General, filed the brief for respondent.

Before Aoyagi, Presiding Judge, and Egan, Chief Judge, and Mooney, Judge.

AOYAGI, P. J.

Affirmed.

**AOYAGI, P. J.**

This appeal is about the cost of caring for a herd of nearly 200 neglected alpacas. Defendant was convicted of one count of felony first-degree animal neglect, ORS 167.330; one count of felony second-degree animal neglect, ORS 167.325; and 15 counts of misdemeanor first-degree animal neglect, ORS 167.330.[1] Pursuant to ORS 167.350(1) (2013),[2] as part of his sentence, defendant was ordered to pay $15,622.09 to the Polk County Sheriff's Office to reimburse its costs to care temporarily for the surviving alpacas until they were in good enough health to be removed from defendant's property. Defendant contends that the trial court erred in ordering him to pay care costs for the herd, because the criminal charges pertained only to 17 of the alpacas, and those 17 alpacas died before receiving any care. For the reasons that follow, we affirm.

In December 2013, Polk County Sheriff's Office Animal Patrol Deputy Kincaid obtained a warrant to search defendant's property and conduct a health check on a herd of alpacas living there. Upon executing the warrant, deputies found 17 dead alpacas, which were later determined to have starved to death, and many living alpacas. The veterinarian in attendance believed that the animals did not have adequate space and had not received adequate nutrition for several months.

Ten days later, Kincaid executed a second warrant to seize the herd and provide emergency veterinary care. By that time, another 29 alpacas had died, and two alpacas were in such poor condition that they were euthanized. The remaining alpacas were seized "in place," because their condition was too poor to move them safely. For 90 days, someone visited the property twice daily to provide food, water, minerals, and salt to the animals, who were "extremely emaciated," and to watch for medical issues. Approximately

---

[1] ORS 167.325 and ORS 167.330 have been amended since defendant committed his crimes, but, because those amendments do not affect our analysis, we refer to the current versions of those statutes in this opinion.

[2] ORS 167.350 has been amended since defendant committed his crimes, and those amendments could affect our analysis—*see* Or Laws 2017, ch 677, § 4— so all references to ORS 167.350 in this opinion are to the 2013 statute, unless otherwise noted.

10 more alpacas died during that period. After 90 days, the surviving alpacas—of which there were 176—were transferred to Oregon State University, which worked with an alpaca rescue organization to find new homes for them.

Defendant was criminally charged with 18 counts of animal neglect. Each count specified an individual animal with a unique identification number, and it is undisputed that the charges all pertained to 17 animals found dead at defendant's property during the search warrant execution, *i.e.*, animals that died as a result of defendant's neglect before the sheriff's office could provide any care to try to save them.

The jury found defendant guilty on all counts, which, after merger, resulted in 17 convictions. As part of its verdict, the jury found as a sentence enhancement factor that Counts 1 and 2—the two felony counts—were part of a criminal episode that involved 40 or more animals. *See* ORS 167.330(4)(b) (enhancement factor for first-degree animal neglect); ORS 167.325(4)(b) (enhancement factor for second-degree animal neglect).

The trial court sentenced defendant to 36 months in prison and three years of post-prison supervision. Pursuant to ORS 167.350(1) (2013), the court also ordered defendant to pay $15,622.09 to the Polk County Sheriff's Office to reimburse its costs to temporarily care for the herd until the surviving alpacas were in good enough health to be removed from defendant's property. Defendant appeals, raising a single assignment of error in which he challenges the restitution order. Defendant contends that, under ORS 167.350(1) (2013), he could only be ordered to pay the cost of caring for the 17 specific alpacas that he was convicted of neglecting, which, in this case, were 17 alpacas that had already died from neglect before the sheriff's office intervened.

As a preliminary matter, we emphasize that this appeal is governed by the 2013 version of ORS 167.350(1), which is important because the statute has since been amended. The 2013 version of the statute provided:

    "In addition to and not in lieu of any other sentence it
    may impose, a court may require a defendant convicted

under ORS 167.315 to 167.333, 167.340, 167.355 or 167.365 to forfeit any rights of the defendant in the animal subjected to the violation, and to repay the reasonable costs incurred by any person or agency prior to judgment in caring for *each animal subjected to the violation.*"

ORS 167.350(1) (2013) (emphasis added).

Defendant argues that, as to each count of the indictment, the trial court had authority to order him to pay the costs of care only for the one animal that was the subject of that count. In making that argument, defendant relies heavily on *State v. Marsh*, 187 Or App 47, 66 P3d 541 (2003). In *Marsh*, the defendant pleaded guilty and was convicted of 10 counts of misdemeanor second-degree animal neglect, but the trial court ordered him to pay care costs for 69 animals. *Id*. at 49. We reversed the judgment on appeal, construing ORS 167.350(1) (1999)—an earlier version of the same statute at issue in this appeal—as only permitting the trial court to order the defendant to pay "for the care of animals that defendant was convicted of neglecting." *Id*. "Because defendant was convicted of neglecting ten animals, restitution can be assessed only for the costs incurred in caring for ten animals." *Id*.

ORS 167.350(1) (2013) is materially identical to ORS 167.350(1) (1999). The 1999 version provided for repayment of costs incurred "in caring for each animal *subjected to abuse, neglect or abandonment*," ORS 167.350(1) (1999) (emphasis added), whereas the 2013 version provided for repayment of costs incurred "in caring for each animal *subjected to the violation*," ORS 167.350(1) (2013) (emphasis added). We discern no significance to that difference in phrasing, at least as relevant to the issue at hand.[3] Accordingly, if there were no distinguishing feature of this case, we would agree with defendant that *Marsh* controls. Even if it is not technically binding, in that the statute was subsequently amended, we adhere to its reasoning in the spirit of *stare decisis*, because

---

[3] To be clear, the same cannot necessarily be said of subsequent amendments to ORS 167.350(1). In 2017, the legislature amended ORS 167.350(1) to provide for repayment of costs incurred "in caring for each animal *associated with the criminal proceeding*." (Emphasis added.) We express no opinion on that amendment, as its significance is not before us.

the minor differences between the 1999 and 2013 versions of the statute do not affect the reasoning of our prior decision.[4]

There *is* a distinguishing feature in this case, however, which is that, as to both Counts 1 and 2, the jury expressly found that "the offense [was] part of a criminal episode involving 40 or more animals." There was no such finding in *Marsh*, which, unlike this case, involved only misdemeanors. *See* ORS 167.330(4) (crime category classification based on number of neglected animals applies only to *felony* first-degree animal neglect); ORS 167.325(4) (crime category classification based on number of neglected animals applies only to *felony* second-degree animal neglect).

When a person "[f]ails to provide minimum care for an animal in the person's custody or control" and that failure "results in serious physical injury or death to the animal," it constitutes the crime of first-degree animal neglect. ORS 167.330(1)(a). First-degree animal neglect is generally a Class A misdemeanor. ORS 167.330(2). It is elevated to a Class C felony in certain circumstances, however, one of which is when "[t]he offense was part of a criminal episode involving 10 or more animals." ORS 167.330(3)(b). Thus, although the crime itself is defined as neglect of a single animal, the severity of the crime depends on the total number of animals neglected in the criminal episode. With respect to *felony* first-degree animal neglect, the total number of animals neglected also affects the crime classification for sentencing purposes, with felony first-degree animal neglect classified "[a]s crime category 6 if 10 to 40 animals were the subject of the neglect" or "[a]s crime category 7 if more than 40 animals were the subject of the neglect." ORS 167.330 (4)(a)-(b).

Similar provisions apply to second-degree animal neglect. *See* ORS 167.325(1)(a) (a person's "[f]ail[ure] to provide minimum care for an animal in such person's custody or control" is second-degree animal neglect); ORS 167.325 (3)(b) (elevating second-degree animal neglect from a Class B

---

[4] The state argues that *Marsh* is plainly wrong, but we disagree that it is plainly wrong. *See State v. Civil*, 283 Or App 395, 405-06, 388 P3d 1185 (2017) (stating that we will overrule existing precedent only if it is "plainly wrong," which is "a rigorous standard grounded in presumptive fidelity to *stare decisis*").

misdemeanor to a Class C felony if "[t]he offense was part of a criminal episode involving 11 or more animals"); ORS 167.325(4)(a)-(b) (classifying felony second-degree animal neglect "[a]s crime category 6 if 11 to 40 animals were the subject of the neglect" or "[a]s crime category 7 if more than 40 animals were the subject of the neglect").

Defendant does not challenge the legal applicability of the enhancement factor, nor does he challenge the sufficiency of the evidence to support the jury's finding on that enhancement factor. At sentencing, the trial court expressly understood that finding to refer to "the herd" as a whole, and defendant does not challenge that point on appeal.[5] Given the jury's express finding on the enhancement factor, we agree with the state that "the violation" for purposes of ORS 167.350(1) (2013) was not only the neglect of the single animal alleged in Count 1 (or Count 2), but rather the neglect of that single animal as part of a criminal episode involving the entire herd. In other words, unlike the defendant in *Marsh*, who was simply convicted of neglecting 10 animals, defendant in this case was convicted of neglecting 17 animals as part of a criminal episode involving the entire herd. As such, unlike in *Marsh*, the judgment of conviction in this case *did* determine that the entire herd had been subjected to neglect. It follows that the trial court had authority to require defendant to repay the Polk County Sheriff's Office the costs that it incurred prior to judgment to care for the herd. *See* ORS 167.350(1) (2013) (providing for repayment of costs incurred by an agency prior to judgment "in caring for each animal subjected to the violation").

Affirmed.

---

[5] Defendant did challenge the point at sentencing, but the trial court rejected his argument, stating that it agreed with the state that, as to Counts 1 and 2, the allegation that the offense was part of a criminal episode involving 40 or more animals "does refer to the herd. That was found and is one of the enhancement factors the jury specifically found which gets you—so I think it is encompassed within the crime. I agree with the State in that regard."